1

2

3

4

5

6

7              **IN THE UNITED STATES DISTRICT COURT**

8            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10  RUDY JACKSON,                          CASE NO. CV F 11-0055 LJO SKO

11              Plaintiff,                 **SUMMARY JUDGMENT DECISION**
           vs.                            (Doc. 139.)

12
    TIMOTHY GEITHNER, Secretary
13  of the Treasury,

14              Defendant.
    _____/

15

16                        **INTRODUCTION**

17        Defendant Treasury Secretary Timothy Geithner ("Secretary") seeks summary judgment in the

18  absence of evidence to support plaintiff Rudy Jackson's ("Mr. Jackson's") discrimination and retaliation

19  claims based on reassignment of his duties to a coworker and purported demotion.  Mr. Jackson responds

20  that the less experienced coworker's promotion was a racially discriminatory demotion for Mr. Jackson.

21  This Court considered the Secretary's summary judgment motion on the record[1] without a hearing,

22  pursuant to Local Rule 230(g).  For the reasons discussed above, this Court GRANTS the Secretary

23  summary judgment.

24  _____

25      [1]      This Court carefully reviewed and considered the record, including all evidence, arguments, points and
    authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed
26  by the parties.  Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the
    effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed,
27  considered and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does
    not rule on objections in a summary judgment context, unless otherwise noted.
28

                                          1

**BACKGROUND**

**Summary**

Mr. Jackson is black, worked at the Fresno IRS Service Center ("Fresno center") for more than 30 years in various departments, and voluntarily retired in 2005. During 1992-2005, Mr. Jackson worked as a safety Management Assistant, which was colloquially referred to as a "safety officer." In this action, Mr. Jackson pursues discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., in that some of his duties were reassigned to a coworker to treat the coworker more favorably than Mr. Jackson and to retaliate against Mr. Jackson's pursuit of an administrative class action in April 2001.[2] The Secretary challenges the absence of adverse action and damages resulting from reassignment of duties or the coworker's promotion.

**Mr. Jackson's Safety Officer Position And The New HazMat Program Analyst Position**

As a Management Assistant or safety officer, Mr. Jackson's duties included:

1.      Oversight of safety issues at the Fresno center;

2.      Safety inspections and employee safety training; and

3.      Serving as a liaison with the IRS national office, local fire departments, and the Occupational Safety and Health Administration ("OSHA").

Mr. Jackson also helped "roll out" the Safety and Health Information Management Systems ("SHIMS") program and describes himself as "the first full time safety officer for the IRS in Fresno."

In the late 1990s or early 2000, a support services specialist/HazMat program analyst position ("HazMat analyst") was created for the Fresno center. In her declaration, Margaret Frech ("Ms. Frech"), the former security and safety section chief and current facilities branch manager for the Fresno center, states the HazMat analyst position was needed "because the workload related to information about the handling and disposal of biological/chemical hazardous materials at the IRS facility was increasing."

/ / /

---

[2]      Although Mr. Jackson's operative Second Amended Complaint for Damages ("SAC") alleges retaliation, Mr. Jackson's opposition papers state that he sues "for race discrimination" and fail to address retaliation. The Secretary construes Mr. Jackson's opposition papers to abandon a retaliation claim and to assert for the first time a discrimination claim. Given Mr. Jackson's absence of clarity as to his claims, this Court and the Secretary are compelled to address purported discrimination and retaliation.

During 1999-2002, Rosanna Rodriguez ("Ms. Rodriguez") served as the HazMat analyst.[3]  Both Ms. Frech and Ms. Rodriguez declare: "A full-time, dedicated position was necessary to accommodate the expanded duties."  The HazMat analyst position was assigned a General Schedule ("GS") 11 level.

In early 2002, Ms. Rodriguez left the HazMat analyst position, and Barbara Mecca ("Ms. Mecca") was assigned a temporary detail to the HazMat analyst position and assumed Ms. Rodriguez' duties.  In his declaration, Mr. Jackson states: "I was instructed to allow her to shadow me, which she did for six months."  Mr. Jackson criticizes Ms. Mecca's "little experience in the area."

Two or three weeks after Ms. Mecca began her HazMat analyst detail, Ms. Frech, as supervisor, assigned Ms. Mecca Safety Program responsibilities.  Ms. Frech and Ms. Mecca declare that the "Safety Program's workload was increasing as the program was being expanded" and that to "accommodate the increased workload," Ms. Frech assigned Ms. Mecca "some responsibilities in the Safety Program" and Ms. Mecca "assumed the position of Safety Officer/HazMat Program Analyst."

In May or June 2002, Ms. Frech assigned Ms. Mecca management of the Ergonomics Team, which up to that time had been managed by a different office.  Ms. Mecca had prior ergonomics experience.  Mr. Jackson had no prior responsibility to manage the Ergonomics Team.

Mr. Jackson claims that during Ms. Mecca's first two years, he "trained her on safety and hazardous materials matters."  Mr. Jackson declares that he trained Ms. Mecca "in late 2004 or early 2005 on SHIMS."

The Secretary notes that as of September 2002, Ms. Mecca and Mr. Jackson's respective duties had been divided. Ms. Frech declares: "I did not assign duties to Ms. Mecca from Mr. Jackson after 2002, including from October 2002 through December 2002."  Ms. Mecca declares: "I have no recollection of assuming responsibilities from Mr. Jackson after September 2002, including from October 2002 through December 2002."  The Secretary explains that although there was overlap in their duties, Ms. Mecca and Mr. Jackson "performed different duties."

Ms. Mecca's safety officer/HazMat analyst duties included providing information for responses or reports to the IRS National Safety Office.  The Secretary attributes to Mr. Jackson to identify only a

---

[3]      Mr. Jackson criticizes Mr. Rodriguez' selection as HazMat analyst given her lack of experience "in the subject matter of the HazMat position."

1   portion of national reviews and some HazMat duties that were reassigned to Ms. Rodriguez or Ms.

2   Mecca from Mr. Jackson.   In his deposition, Mr. Jackson testified that he could not remember

3   specifically how national review responsibility was split.  Mr. Jackson claimed that HazMat duties were

4   "officially" transferred to Ms. Rodriguez and Ms. Mecca but he maintained responsibility for such

5   duties.  In his declaration, Mr. Jackson identified his duties as of his October 3, 2005 retirement to

6   include: "indoor air quality, Safety and Health Information Management Systems (SHIMS) program,

7   investigating all accidents, meeting with the site counsel, all three directors, and dealing with OSHA and

8   GSA,[4] national reviews and root cause analysis."

9   **Snubbing And "Demotion" Of Mr. Jackson**

10       Ms. Mecca notes that in 2003 or 2004, she assisted Jeff Cole and Mr. Jackson "on an analysis

11   of workers compensation cases."  Mr. Jackson declares: "It was ordered that Barbara Mecca sit in on the

12   project."  Mr. Jackson claims that "[w]hen the project was completed and recognition given, credit was

13   given to Cole and Mecca, my name was not mentioned."

14       In 2004, the HazMat analyst position was re-graded throughout the IRS as a GS 12 level position.

15   Ms. Mecca applied for and was selected to the position.  Mr. Jackson did not apply for the position.  Mr.

16   Jackson declares that at an "employees town hall meeting" on an unidentified date, manager Linda

17   Holbrook ("Ms. Holbrook") announced that "the IRS was going to announce 'Rosanna's old GS-11

18   position' at the GS-12 level.  As a GS-8 I could apply for the GS-11 but not the GS-12."

19       Mr. Jackson claims that Ms. Mecca's GS 12 level promotion was his demotion.  He declares:

20       I had worked as "Safety Officer" since 1991, but with the hiring of Mecca to the GS 12
         position, I was demoted to the "Safety Assistant" position.  At the time Mecca came into
21       the safety unit, she had little experience in the area and as a result of the training I gave
         her, she was promoted and I was, in effect demoted.
22

23       Mr. Jackson also points to the deposition testimony of his supervisor Melinda Winston ("Ms.

24   Winston"):

25       Q.      Isn't it true that up until that time Mr. Jackson had been the lead in safety issues
                 and that he was referred to as a safety officer?
26

27

28       [4]        GSA is the federal General Services Administration.

4

1    A.    That's true.

2    Q.    In fact, he was at least verbally demoted from a safety officer to a safety assistant,
3          correct?

4          . . .

5    THE WITNESS: Yes.

6    MR. ROBINSON: So he went from being the lead on safety to being an assistant, correct?

7    A.    Correct.

8        Mr. Jackson declares that he was embarrassed during a meeting with executives and safety

9    officers from around the nation when "Ms. Mecca introduced herself as Safety/HazMat Officer and

10   introduced me as safety assistant."

11       Mr. Jackson never sought to have his safety Management Assistant position re-graded. The only

12   promotion he applied for relative to that position was in 1999 when Mr. Rodriguez obtained the HazMat

13   analyst position. Mr. Jackson received no official demotion or decrease in pay or benefits from 2000

14   to his 2005 retirement. After Mr. Jackson retired, his safety Management Assistant position was

15   downgraded to a GS 7 level.

16                           **Mr. Jackson's Administrative Claim**

17       On December 5, 2002, Mr. Jackson sought informal counseling to address his complaint that

18   other employees were prepared and passed over Mr. Jackson for promotions. Mr. Jackson submitted

19   a March 11, 2003 formal administrative complaint to claim age, race and sex discrimination and

20   retaliation for April 2001 pursuit of an administrative class complaint in that management develops and

21   promotes others to prevent his advancement and has minimized his duties.

22                           **Mr. Jackson's Claims And Damages**

23       This Court dismissed several of Mr. Jackson's SAC discrimination and retaliation claims. After

24   appeal to the Ninth Circuit Court of Appeals and its affirming and reversing in part dismissal of claims,

25   Mr. Jackson is limited to the SAC's following Title VII claim: "In or around 2002, Jackson's duties were

26   reduced and given to non-African-American employees in higher graded positions as retaliation against

27   Jackson's complaints of race discrimination."

28       Mr. Jackson seeks lost wages of $52,998, the difference between his actual and GS 12 level

1    wages during 2001-2005.  Mr. Jackson claims $300,000 compensatory damages for emotional distress.

2                                              **DISCUSSION**

3                                      **Summary Judgment Standards**

4           The Secretary seeks summary judgment in the absence of Mr. Jackson suffering adverse action

5    with reassignment of job duties and a causal link between his administrative class complaint and transfer

6    of duties.

7           F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense

8    – or the part of each claim or defense – on which summary judgment is sought."  "A district court may

9    dispose of a particular claim or defense by summary judgment when one of the parties is entitled to

10   judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st

11   Cir. 1999).

12          Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any

13   material fact and the movant is entitled to judgment as a matter of law."  F.R.Civ.P. 56(a); *Matsushita*

14   *Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv.,*

15   *Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary

16   judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need

17   for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers*

18   *v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

19          On summary judgment, a court must decide whether there is a "genuine issue as to any material

20   fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(a), (c); *Covey*

21   *v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*,

22   398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82

23   S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir.

24   1984).   "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

25   inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for

26   summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

27   S.Ct. 2505 (1986)

28          The evidence of the party opposing summary judgment is to be believed and all reasonable

                                                      6

1   inferences that may be drawn from the facts before the court must be drawn in favor of the opposing

2   party.  *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The

3   inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or

4   whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-

5   252, 106 S.Ct. 2505.

6        To carry its burden of production on summary judgment, a moving party "must either produce

7   evidence negating an essential element of the nonmoving party's claim or defense or show that the

8   nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of

9   persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th

10  Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to

11  prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case");

12  *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).  A

13  "complete failure of proof concerning an essential element of the nonmoving party's case necessarily

14  renders all other facts immaterial" to entitle the moving party to summary judgment.  *Celotex Corp. v.*

15  *Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

16        "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

17  court that there is no genuine issue of material fact."  *Nissan Fire*, 210 F.3d at 1102; *see High Tech*

18  *Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material.

19  Only disputes over facts that might affect the outcome of the suit under the governing law will properly

20  preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

21        "If a moving party fails to carry its initial burden of production, the nonmoving party has no

22  obligation to produce anything, even if the nonmoving party would have the ultimate burden of

23  persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

24  "If, however, a moving party carries its burden of production, the nonmoving party must produce

25  evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

26  at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

27  fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

28  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry

7

1   of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

2   make the showing sufficient to establish the existence of an element essential to that party's case, and

3   on which that party will bear the burden of proof at trial.")

4       "But if the nonmoving party produces enough evidence to create a genuine issue of material fact,

5   the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322,

6   106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough

7   'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp.*

8   *v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-

9   289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the

10  plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

11      As discussed below, Mr. Jackson lacks facts to support prima facie discrimination or retaliation

12  to warrant summary judgment for the Secretary.

13  **Burden Shifting Framework**

14      The Secretary argues that Mr. Jackson is unable to establish prima facie discrimination or

15  retaliation or that IRS' legitimate, non-discriminatory division of duties decisions were a pretext to

16  discriminate or retaliate against Mr. Jackson.

17      For Title VII discrimination and retaliation claims at issue here, the *McDonnell Douglas*[5] burden-

18  shifting framework applies in the absence of direct evidence of discrimination or retaliation.[6] *Metoyer*

19  *v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007); *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 730-

20  731 (9th Cir. 1986) (order and allocation of proof for retaliation claims follow familiar scheme

21  announced in *McDonnell Douglas*). "At the first step of *McDonnell Douglas*, the plaintiff must establish

22  a prima facie case of discrimination or retaliation." *Metoyer*, 504 F.3d at 931, n. 6. "If the plaintiff

23  makes out her prima facie case of either discrimination or retaliation, the burden then 'shifts to the

24  defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory [or

25  retaliatory] conduct.'" *Metoyer*, 504 F.3d at 931, n. 6 (quoting *Vasquez v. County of Los Angeles*, 349

26  

27      [5]   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

28      [6]   Mr. Jackson concedes that this is "a circumstantial evidence case."

8

1 F.3d 634, 640 (9th Cir. 2003)).

2 "Finally, at the third step of *McDonnell Douglas*, if the employer articulates a legitimate reason

3 for its action, 'the presumption of discrimination drops out of the picture, and the plaintiff may defeat

4 summary judgment by satisfying the usual standard of proof required'" under F.R.Civ.P. 56(c)(1).

5 *Metoyer*, 504 F.3d at 931 (quoting *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir.

6 2006) (citations and internal quotation marks omitted)). If the employer carries its burden, plaintiff must

7 have an opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the

8 employer were not its true reasons but were a pretext for discrimination. *Texas Dept. of Community*

9 *Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *McDonnell Douglas*, 411 U.S. at 804; 93

10 S.Ct. 1817*; see Brundage v. Hahn*, 57 Cal.App. 4th 228, 66 Cal.Rptr.2d 830, 835 (1997). "If a plaintiff

11 succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive,

12 summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be

13 believed." *Washington v. Garrett*, 10 F.3d 1421, 1432-1433 (9th Cir. 1993). The plaintiff is required

14 to produce "specific, substantial evidence of pretext" to avoid summary judgment. *Collings v. Longview*

15 *Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995).

16 Despite the burden shifting, the ultimate burden of proof remains always with the plaintiff to

17 show that the employer intentionally discriminated because of the plaintiff's race. *See Burdine*, 450 U.S.

18 at 253, 101 S.Ct. 1089; *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000); *Rose v. Wells*

19 *Fargo & Co.*, 902 F.2d 1417, 1420-1421 (9th Cir. 1990), *cert. denied,* 533 U.S. 950, 121 S.Ct. 2592

20 (2001).

21 As an alternative to the *McDonnell Douglas* framework, a plaintiff responding to a summary

22 judgment motion "may simply produce direct or circumstantial evidence demonstrating that a

23 discriminatory [or retaliatory] reason more likely than not motivated [the employer]." *McGinest v. GTE*

24 *Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (citation omitted). The "*McDonnell Douglas* test is

25 inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc.*

26 *v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613 (1985).

27 "When the plaintiff offers direct evidence of discriminatory [or retaliatory] motive, a triable issue

28 as to the actual motivation of the employer is created even if the evidence is not substantial. . . . it need

be 'very little.'" *Goodwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (quoting *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir 1991)).  "Direct evidence is evidence which, if believed, proves the fact [of discrimination or retaliation] without inference or presumption." *Goodwin*, 150 F.3d at 1221 (citation omitted).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

With these evidentiary standards in mind, this Court turns to the worthiness of Mr. Jackson's discrimination and retaliation claims.

## **Discrimination**

Title VII prohibits an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . ." 42 U.S.C. § 2000e-2(a)(1).  The Secretary challenges Mr. Jackson's ability to pursue a discrimination claim and to establish a prima facie case of discrimination in absence of evidence that he was subjected to adverse action.

### *Discrimination Raised For The First Time*

The Secretary contends that Mr. Jackson is not entitled to assert discrimination for the first time in opposition to summary judgment.

When "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court." *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1080 (9th Cir. 2008); *see, e.g., Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir.2006) ("'Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.'"); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir.2006) (complaint failed to satisfy F.R.Civ.P. 8(a) because it "gave the [defendants] no notice of the specific factual allegations presented for the first time in [the plaintiff's] opposition to summary judgment").

The SAC alleges retaliation, not discrimination.  Mr. Jackson's abandonment of retaliation does not allow him to assert discrimination for the first time.  Raising discrimination for the first time in a summary judgment opposition is too late.  Discrimination is not properly before this Court.  Nonetheless,

10

1   out of an abundance of caution, this Court turns to whether Mr. Jackson establishes factual issues as to

2   an actionable discrimination claim.

3                       ***Absence Of Discrimination During Relevant Period***

4           The Secretary contends that "the time period covered by Jackson's claim" requires defining given

5   the SAC's vague reference to transfer of duties "in or around 2002." The Secretary argues that Mr.

6   Jackson is limited to address alleged discrimination during October 21, 2002 to December 5, 2002

7   ("relevant period"), the 45-day period preceding his December 5, 2002 informal counseling.

8           Title VII regulations require "[a]ggrieved persons" claiming discrimination based on race or

9   color to "consult a Counselor prior to filing a complaint in order to try to informally resolve the matter."

10  29 C.F.R. § 1614.105(a). "An aggrieved person must initiate contact with a Counselor within 45 days

11  of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days

12  of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Failure to comply with this regulation

13  is "fatal to a federal employee's discrimination [or retaliation] claim." *Lyons v. England*, 307 F.3d 1092,

14  1105 (9th Cir. 2002); *see, e.g., Johnson v. United States Treasury Dept.*, 27 F.3d 415, 416 (9th Cir.1994)

15  (per curiam) (affirming summary judgment based on plaintiff's failure to seek counseling before one year

16  after the alleged incident of discrimination); *Boyd v. U.S. Postal Service*, 752 F.2d 410, 414-415

17  (plaintiff "precluded from pursuing his claim in federal courts" because he did not bring timely his

18  grievance to the attention of the EEO counselor).

19          The Secretary faults Mr. Jackson's inability to identify a "discrete act of discrimination that

20  occurred between October 21, 2002 to December 5, 2002." "[D]iscrete discriminatory acts are not

21  actionable if time barred, even when they are related to acts alleged in timely filed charges." *National*

22  *Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061(2002). "Each discrete

23  discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 122, 122

24  S.Ct. 2061. "*Morgan* makes clear that claims based on discrete acts are only timely where such acts

25  occurred within the limitations period." *Cherosky v. Hendreson*, 330 F.3d 1243, 1246 (9th Cir. 2003).

26  The Secretary points to the absence of alleged transfer of duties or other adverse employment action

27  during the relevant period to support alleged discrimination. The Secretary notes that in March 2002,

28  Ms. Mecca assumed HazMat duties as the HazMat analyst, the position which Ms. Rodriguez previously

                                                    11

held.  The Secretary points out that in April 2002, Ms. Mecca "assumed some safety duties alongside Jackson" and in May or June 2002, assumed ergonomics duties for which Mr. Jackson was not responsible.  The Secretary explains that by September 2002, Ms. Mecca and Mr. Jackson's duties "were clearly delineated," including Ms. Mecca's duties to prepare national office reports, and that Ms. Mecca did not assume additional safety duties after September 2002.  The Secretary concludes that Mr. Jackson fails to demonstrate that the national office reports and HazMat duties were transferred during the relevant period in that Ms. Mecca assumed them previously.  In addition, the Secretary notes that Ms. Mecca's GS 12 level promotion was in 2004, well beyond the relevant period.

The Secretary is correct that Mr. Jackson is unable raise factual issues as to alleged discrete discriminatory acts during the relevant period.  As such, a purported discrimination claim fails.  Nonetheless, out of an abundance of caution, this Court will address prima facie case elements.

### Prima Facie Case

A plaintiff "bears the initial burden of establishing a prima facie case of discrimination by introducing evidence that gives rise to an inference of unlawful discrimination."  *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

For a prima facie case, a plaintiff "must generally show" that:

1.	He/she was a member of a protected class;

2.	He/she was qualified for the position he sought;

3.	He/she suffered an adverse employment action; and

4.	There were circumstances suggesting that the employer acted with a discriminatory motive, such as, similarly situated employees not in the protected class received more favorable treatment.

*See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006); *see also Jones v. Department of Corrections and Rehabilitation*, 152 Cal.App.4th 1367, 1379, 62 Cal.Rptr.3d 200 (2007) (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354-355, 100 Cal.Rptr.2d 352 (2000) (adopting the test applicable to federal discrimination claims in accordance with *McDonnell Douglas*)).

Mr. Jackson argues that he establishes prima facie discrimination in that he is black, was

1    qualified for an unidentified position, was demoted from safety officer to safety assistant, and Ms. Mecca

2    was treated more favorably than he was.

3                                      *Adverse Action*

4         The Secretary argues that transfer of duties from Mr. Jackson is not adverse action to support a

5    discrimination claim.

6         Inquiry whether employment action is adverse requires a case-by-case determination based upon

7    objective evidence. *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir. 1996). Adverse employment

8    action requires "a materially adverse change" in employment terms. *Kocsis v. Multi-Care Management,*

9    *Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). A "tangible employment action in most cases inflicts direct

10   economic harm." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762, 118 S.Ct. 2257 (1998). "A

11   tangible employment action constitutes a significant change in employment status, such as hiring, firing,

12   failing to promote, reassignment with significantly different responsibilities, or a decision causing a

13   significant change in benefits." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Kohler v. Inter-Tel*

14   *Technologies*, 244 F.3d 1167, 1179 (9th Cir. 2001). To qualify as adverse, the action must be "more

15   disruptive than a mere inconvenience or alteration of job responsibilities. A materially adverse change

16   might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or

17   salary, a less distinguished title, a material loss of benefits, significantly diminished material

18   responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat.*

19   *Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Adverse actions also include "dissemination of

20   a negative employment reference, issuance of an undeserved negative performance review and refusal

21   to consider for promotion." *Brooks*, 229 F.3d at 928.

22        Moreover, "reassignment of job duties is not automatically actionable. Whether a particular

23   reassignment is materially adverse depends upon the circumstances of the particular case, and should

24   be judged from the perspective of a reasonable person in the plaintiff's position, considering all the

25   circumstances." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53,71, 126 S.Ct. 2405

26   (2006) (citation and internal quotations omitted). Failure to show harm by reassignment does support

27   adverse action. *See Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 655 (7th Cir. 2010).

28        The Secretary faults Mr. Jackson's failure to articulate "harm due to the alleged transfer of

                                              13

1   duties," especially given that Mr. Jackson received neither a demotion in GS level nor reduction in pay

2   or benefits.  The Secretary notes that Mr. Jackson did not seek to re-grade his position.

3        Mr. Jackson's entire case rests on his purported demotion "in effect" from safety officer to safety

4   assistant.  Mr. Jackson claims a triable factual issue exists whether he "was demoted or not."  The record

5   lacks evidence that Mr. Jackson was actually demoted.  The record merely shows that a HazMat analyst

6   position was created, the position was re-graded in 2004 to a GS 12 level position, Ms. Mecca applied

7   for and obtained the position, and Mr. Jackson did not apply for the position.  There is no evidence of

8   a material adverse change in Mr. Jackson's employment terms to inflict direct economic harm to him.

9   He experienced no decrease in pay or benefits.  At all relevant times, Mr. Jackson served as a

10  Management Assistant, based on his own evidence.  Mr. Jackson offers nothing more than that he was

11  no longer referred to as safety officer, a title he never officially held.  Mr. Jackson's evidence reveals

12  that "safety officer" and "safety assistant" were "working titles."  In the absence of adverse action, Mr.

13  Jackson's discrimination claim fails despite his characterization of Ms. Mecca's promotion as his

14  demotion.

15  **Retaliation**

16       Title VII prohibits an employer "to discriminate against any of his employees or applicants for

17  employment . . . because he has opposed any practice made an unlawful employment practice by this

18  subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

19  investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

20  ***Absence Of Retaliation During Relevant Period***

21       The Secretary faults Mr. Jackson's inability to identify a "discrete act of retaliation that occurred

22  within the relevant period of October 21, 2002 to December 5, 2002."  "Under federal law, a retaliatory

23  act is considered a discrete act that occurs at a particular time . . ."  *Eng v. County of Los Angeles*, 737

24  F.Supp.2d 1078, 1098 (C.D. Cal. 2010).

25       Similar to discrimination, the Secretary is correct that Mr. Jackson is unable to pursue alleged

26  retaliation arising prior to October 21, 2002.  The Secretary is further correct in pointing to the absence

27  of retaliation during the relevant period to support a Title VII claim.  As such, a purported retaliation

28  claim fails.  Nonetheless, out of an abundance of caution, this Court will address prima facie case

14

1   elements.

2   *Prima Facie Case*

3      To make out a retaliation prima facie case, a plaintiff must demonstrate that:

4      1.      He/she engaged in protected activity;

5      2.      He/she suffered an adverse employment action; and

6      3.      There was a causal link between his/her activity and the employment action.

7   *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-1066 (9th Cir. 2003); *Brooks v. City of San*

8   *Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

9   *Adverse Action*

10     The Secretary argues that transfer of duties from Mr. Jackson is not adverse action to support a

11   retaliation claim.

12     "The antiretaliation provision protects an individual not from all retaliation, but from retaliation

13   that produces an injury or harm." *White*, 548 U.S. at 67, 126 S.Ct. 2405. A plaintiff's displeasure "by

14   an employer's act or omission does not elevate that act or omission to the level of a materially adverse

15   employment action." *Blackie*, 75 F.3d at 725. "An employee's decision to report discriminatory

16   behavior cannot immunize that employee from those petty slights or minor annoyances that often take

17   place at work and that all employees experience." *White*, 548 U.S. at 68, 126 S.Ct. 2405. "[O]nly

18   non-trivial employment actions that would deter reasonable employees from complaining about Title

19   VII violations will constitute actionable retaliation." *Brooks*, 229 F.3d at 928. A retaliation plaintiff

20   "must show that a reasonable employee would have found the challenged action materially adverse,

21   which in this context means it well might have dissuaded a reasonable worker from making or

22   supporting a charge of discrimination." *White*, 548 U.S. at 68, 126 S.Ct. 2405 (citations and internal

23   quotations omitted). "[A]n action is cognizable as an adverse employment action if it is reasonably likely

24   to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th

25   Cir.2000).

26     The Secretary faults Mr. Jackson's failure to articulate "harm due to the alleged transfer of

27   duties," especially given that Mr. Jackson received neither an official demotion in GS level nor reduction

28   in pay or benefits. The Secretary notes that Mr. Jackson did not seek to re-grade his position.

1    As addressed above, Mr. Jackson experienced no actionable adverse action.  Mr. Jackson

2  demonstrates no more than his displeasure with Ms. Mecca's ascendance and his purported

3  embarrassment. Mr. Jackson offers nothing remotely close to adverse action to support a Title VII claim.

4                                            *Proximity*

5    The Secretary further faults Mr. Jackson's failure "to show there was any causal link between

6  his claimed adverse employment action and a protected activity."  The Secretary points to the 18-month

7  gap between Mr. Jackson's April 2001 pursuit of an administrative class action and transfer of duties

8  in late 2002.

9    To support an inference of retaliatory motive, the adverse action must have occurred "fairly soon

10  after the employee's protected expression." *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009-10 (7th

11  Cir.2000). "A nearly 18-month lapse between protected activity and an adverse employment action is

12  simply too long, by itself, to give rise to an inference of causation." *Villiarimo v. Aloha Island Air, Inc.*,

13  281 F.3d 1054, 1065 (9th Cir. 2002); *see Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035

14  (9th Cir. 2006) (gap between plaintiff's complaint in November 2001 plaintiff's termination in July 2002

15  "was too great to support an inference that [plaintiff's] complaints caused his termination").

16    Neither the record nor Mr. Jackson suggest a retaliatory motive arising from adverse action

17  occurring soon after Mr. Jackson's protected activity.  No evidence supports prima facie retaliation.

18                                       **Legitimate Reasons**

19    The Secretary argues that the IRS had a legitimate, non-discriminatory reasons regarding the

20  HazMat analyst position which "was created because the duties demanded the work of a full-time

21  dedicated individual." The Secretary notes that Ms. Mecca's assuming "parallel safety duties" in April

22  2002 "was due to the increasing size of the safety program overall, which was becoming too great a

23  burden for one position."

24    If plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate some

25  legitimate, nondiscriminatory reason" for adverse employment action. *McDonnell Douglas Corp.,* 411

26  U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 252-253, 101 S.Ct. 1089; *Coleman*, 232 F.3d at 1281;

27  *Guz*, 24 Cal.4th at 355-356, 100 Cal.Rptr. at 379; *Brundage v. Hahn*, 57 Cal.App.4th 228, 236, 66

28  Cal.Rptr.2d 830, 835 (1997).

1    "The defendant's burden at this stage is one of production, not persuasion. The court may not

2    make a credibility assessment." *Njenga v. San Mateo County Superintendent of Schools*, 2010 WL

3    1261493, at *14 (N.D. Cal. 2010) (citing *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

4    142, 120 S.Ct. 2097 (2000)).   "The defendant need not persuade the court that it was actually motivated

5    by the proffered reasons." *Burdine*, 450 U.S. 254, 101 S.Ct. 1089.

6    Neither the record nor Mr. Jackson suggest that IRS reasons for creating and regrading the

7    HazMat analyst position are illegitimate or unreasonable.  Nothing suggests that Mr. Jackson's safety

8    Manager Assistant status was unreasonable.

9    **Pretext**

10   The Secretary holds Mr. Jackson "to show that the proffered reasons are false and that the real

11   reason was in retaliation for past EEO activity."   The Secretary faults Mr. Jackson's inability to "show

12   the Secretary's legitimate, non-discriminatory reasons for assigning Mecca parallel duties in 2002 was

13   a pretext."

14   "If the defendant offers admissible evidence of a legitimate, nondiscriminatory reason for the

15   claimed adverse action, the *McDonnell Douglas* framework and its presumption of discrimination

16   disappears, and the plaintiff is left to prove by a preponderance of the evidence that the reasons offered

17   by the defendant are merely a pretext for discrimination [or retaliation]." *Njenga*, 2010 WL 1261493,

18   at *14 (citing *see Reeves*, 530 U.S. 133, 143, 120 S.Ct. 2097 (2000)).  The "critical" issue at the pretext

19   stage is whether the plaintiff produces "sufficient evidence to raise a triable issue of fact as to whether

20   the reason proffered by [employer] for denying her the promotion was a pretext for unlawful retaliation

21   or discrimination. *Bergene v. Salt River Project Agr. Imp. and Power Dist.*, 272 F.3d 1136, 1141 (9th

22   Cir. 2001); *see Manatt v. Bank of America,* N.A., 339 F.3d 792, 801 (9th Cir. 2003) ("Because [plaintiff]

23   failed to introduce any direct or specific and substantial circumstantial evidence of pretext, summary

24   judgment for the [defendant] must be affirmed."); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.

25   1983) (failure to "produce any specific, substantial evidence of pretext" support summary judgment for

26   employer);  *Brundage*, 57 Cal.App.4th at 236, 66 Cal.Rptr.2d at 835.

27   "In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce

28   'specific, substantial evidence of pretext.'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994)

1  (quoting *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983)).  In other words, the plaintiff "must

2  tender a genuine issue of material fact as to pretext in order to avoid summary judgment."  *Steckl*, 703

3  F.2d at 393.  A "plaintiff cannot create a genuine issue of pretext to survive a motion for summary

4  judgment by relying solely on unsupported speculations and allegations of discriminatory intent."

5  *Crawford v. MCI Worldcom Communications, Inc.*, 167 F.Supp.2d 1128, 1135 (S.D. Cal. 2001).

6  The Secretary argues that Mr. Jackson offers "only speculation about retaliation based on

7  unsupported allegations."  The Secretary points to the lack of evidence that transfer of his duties was due

8  to "his participation in the class action."  The Secretary notes Mr. Jackson's inability to identify "who

9  the alleged decision-maker was who transferred his duties" and to present evidence "that any actual

10  decision-makers, in fact, took into account Jackson's participation in the class action."

11  Neither the record nor Mr. Jackson suggests a pretext for discrimination or retaliation.  Mr.

12  Jackson offers mere speculation as to purported discrimination or retaliation, and as such, his Title VII

13  claims fail.

14  **Lost Wages**

15  Mr. Jackson claims lost wages of $52,998, the difference in wages between Mr. Jackson's GS

16  8 level, Step 10 and a GS 12 level, Step 1 during 2001-2005.

17  The Secretary faults the absence of "conduct in the relevant time period to support a claim for

18  economic loss" and characterizes Mr. Jackson's lost wages claim as "a speculative windfall."

19  For Title VII claims, "back pay remains an equitable remedy to be awarded by the district court

20  in its discretion."  *Lutz v. Glendale High School*, 403 F.3d 1061, 1069 (9th Cir. 2005).

21  The Secretary notes that Mr. Jackson seeks lost wages "based on his conjecture that he would

22  have been promoted to a GS-12" but that "lack of a promotion is not the basis of his claim," which "is

23  solely related to the transfer of duties in late 2002."  The Secretary points out that two ostensible

24  promotions (Ms. Rodriguez' GS 11 level promotion in late 1990s or early 2000 and Ms. Mecca's GS

25  12 level promotion, for which Mr. Jackson did not apply) occurred well outside the October 21, 2002

26  to December 5, 2002 relevant period.  The Secretary explains that Mr. Jackson never sought a higher

27  re-grading of his safety Management Assistant position and "has adduced no evidence that the IRS

28  would have re-graded his position as a GS-12."  The Secretary notes that Mr. Jackson's position was

1   downgraded to a GS 7 level on his retirement.

2        The Secretary has more than demonstrated that Mr. Jackson is not entitled to recover lost wages.

3   His lost wages claim fails in the absence of a viable Title VII claim.

4                                    **Compensatory Damages**

5        The Secretary argues that Mr. Jackson is entitled to no more that "garden variety" emotional

6   distress damages.

7        Under Title VII, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a(a)(1), "a Title

8   VII plaintiff who wins a back pay award may also seek compensatory damages for future pecuniary

9   losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other

10  nonpecuniary losses." *Landgraf v. USI Film Products*, 511 U.S. 244, 253, 114 S.Ct. 1483 (1994)

11  (internal quotation marks and citation omitted). In *Carey v. Piphus*, 435 U.S. 247, 255-56, 98 S.Ct. 1042

12  (1978), the U.S. Supreme Court held that compensatory damages, such as for emotional harm caused

13  by the deprivation of constitutional rights, may be awarded only when the claimant submits proof of

14  actual injury. Although *Carey* refers to damage awards under 42 U.S.C. § 1983, its reasoning and

15  standards apply to Title VII emotional distress claims. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1053

16  (5th Cir. 1998); *see Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1121 (3rd Cir. 1988) (plaintiff in

17  a corresponding 42 U.S.C. § 1981 action "must present evidence of actual injury, however, before

18  recovering compensatory damages for mental distress"); *Ramsey v. American Air Filter Co.*, 772 F.2d

19  1303, 1313 (7th Cir.1985) ("competent evidence" must support award for compensatory damages in §

20  1981 action). "[S]peculative damages will not be awarded" in Title VII cases. *Gunby*, 840 F.2d at 1121.

21       The Secretary faults the absence of expert opinion to support an emotional distress claim for Mr.

22  Jackson. The Secretary attributes Mr. Jackson to claim that he saw a stress counselor once in 2000-2001

23  and that sometime in the 2000s saw a psychiatrist for a few months as to sexual issues affecting his

24  marriage. The Secretary notes that emotional distress which the stress counselor addressed arose "well

25  prior to any actionable conduct." The Secretary points to the lack of evidence to tie his treatment with

26  the psychiatrist to transferred duties. The Secretary concludes that Mr. Jackson is limited to "garden

27  variety" minimal damages based solely on his testimony.

28       In evaluating the reasonableness of a non-economic damages award in discrimination suits,

                                            19

1   courts often examine the duration, extent and consequences of mental anguish suffered by the plaintiff

2   to determine whether the case is a "garden variety" mental-anguish claim, in which awards "hover in

3   the range of $5,000 to $30,000." *Kinneary v. City of New York*, 536 F.Supp.2d 326, 331 (S.D. N.Y.

4   2008); *see Rainone v. Potter*, 388 F.Supp.2d 120, 122 (E.D. N.Y. 2005) (low end "garden variety"

5   distress claims range from $5,000 to $35,000). "'In such cases, the evidence usually is limited to the

6   testimony of the plaintiff, who describes the emotional distress in vague or conclusory terms, presents

7   minimal or no evidence of medical treatment, and offers little detail of the duration, severity, or

8   consequences of the condition.'" *Kinneary*, 536 F.Supp.2d at 331 (quoting *Reiter v. Metropolitan

9   Transp. Auth. of New York*, 2003 WL 22271223, at *9 (S.D. N.Y. 2003)). "[C]ourts scrupulously

10  analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on

11  the plaintiff's testimony." *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1251 (4th Cir. 1996).

12      The Secretary concludes that "[a]nything more than minimal damages, absent other evidence

13  would be speculative and improperly excessive."

14      Neither the record nor Mr. Jackson offer anything to support compensatory damages, especially

15  given the futility of his Title VII claims.

16                          **CONCLUSION AND ORDER**

17      For the reasons discussed above, this Court:

18  1.      GRANTS the Secretary summary judgment;

19  2.      DIRECTS the clerk to enter judgment in favor of Treasury Secretary Timothy Geithner

20          and against plaintiff Rudy Jackson and to close this action; and

21  3.      VACATES the July 12, 2001 pretrial conference and September 12, trial in this action.

22      IT IS SO ORDERED.

23  **Dated:    June 2, 2011**              __/s/ Lawrence J. O'Neill__
                                            UNITED STATES DISTRICT JUDGE

24

25

26

27

28